IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

M.A. BENTLY, TYSON BUFFINGTON, DAVE CHESSMORE, K.R. CHRISTNER, TERRY COON, TED J. DANIELS, CHRIS ELSTEN, J.R. ERICKSON, RICK L. FLETCHER, JOHN GRAY, TODD J. GUTSCHENRITTER, STEVEN L. HATTON, IRVING F. HIATT, KEVIN E. HOSSELKUS, R.D. HUND, KEVIN KNEPP, DANNY R. KRAMER, R.J. KRUKEMEYER, M.A. MILLER, KENNETH MOORE, W.B. NILES, TONY OSTRANDER, J.W. PHIPPS, RAY F. RAVENSCROFT, C.A. REED, M.K. SAATHOFF, JAY R. SCHNEIDER, JOHN SCHNEIDER, G.C. SCOVILL, D.R. SIEVEKE, CARLOS STREIT, L.J. STUDLEY, GARY D. THOMPSON, R.J. TRUJILLO, A.J. VIGIL, HEATH WADSWORTH, G.J. WARING, M.S. WILSON, and J.D. ZOGG,

    Plaintiffs,

v.

UNITED TRANSPORTATION UNION, and UNION PACIFIC RAILROAD COMPANY,

    Defendants.

8:05CV71

MEMORANDUM AND ORDER

This matter is before the court on defendants' motions for summary judgment, Filing Nos. 58, 60, and 62; motions for summary judgment by the plaintiffs against defendant United Transportation Union (UTU), Filing No. 64, and against Union Pacific Railroad (UP) by the plaintiffs, Filing No. 76; and motions to dismiss a party filed by plaintiffs Kevin E. Knepp and Ted J. Daniels. Filing Nos. 101 and 102. The court finds that the motions to

dismiss are not contested and should be granted. With regard to the various motions for summary judgment, the court has carefully reviewed the record, briefs, and relevant caselaw and concludes that plaintiffs' motions are denied, defendants' motions are granted, and this case is dismissed.

**BACKGROUND**[1]

This action arises under the Railway Labor Act (RLA). 45 U.S.C. §§ 151 *et seq.* All plaintiffs are employed by Union Pacific and are members of UTU.[2] See Filing No. 9, Amended Complaint at ¶ 2. Plaintiffs are employed as trainmen and locomotive engineers and are residents of Nebraska. *Id.* The current dispute centers around the interpretation of a 1985 Collective Bargaining Agreement (CBA) and the 1987 Margason Agreement (Margason). Plaintiffs assert that the CBA gives them certain seniority rights and the Union has failed to properly represent their interests. Plaintiffs are suing UP for breach of contract.

Plaintiffs allege that on October 31, 1985, UP and UTU entered into the CBA. *Id.* at ¶ 5. An agreement known as the Margason Agreement was entered into in 1987, and it provided for retention of "hostler"[3] positions in engine service, a position that could otherwise be phased out under the CBA. According to the defendants, the CBA requires the engine service employees to exhaust all engine service seniority prior to returning to a train service position, and Article XIII of the CBA permitts full-time hostlers to continue to exist and such positions would be filled by those in engine service. The plaintiffs argue that this interpretation by UTU is in bad faith and discriminatory. Basically, there are two

---

[1] The court incorporates herein the relevant facts as stated in its Memorandum and Order dated November 23, 2005. Filing No. 25.

[2] Union Pacific is a Delaware corporation doing business in the State of Nebraska, and UTU maintains offices in North Platte, Nebraska. See Filing No. 9, Amended Complaint at ¶¶ 3-4.

[3] Hostlers generally move engines in the yard and are responsible for certain basic maintenance.

lines of train positions at issue in this lawsuit—engine service jobs and train service jobs. In essence, plaintiffs maintain they are entitled to move between engine service jobs and train service jobs based on their seniority. Defendants argue that when an employee elects to work in the engine service jobs, an employee must work that line of jobs before he can transfer to a train service job. Defendants contend the process has worked that way for over twenty years.

According to the plaintiffs, UP and UTU have entered into an agreement and conspiracy to discriminate against them by promoting other employees of lesser experience and length of service. *Id.* at ¶ 12. Plaintiffs allege that they have been denied promotions to which they are entitled, despite having more seniority than the employees promoted by UP. *Id.* Plaintiffs contend that North Platte is the only place in the UP system where senior trainmen fill hostler jobs, while junior trainmen fill train service positions. According to the plaintiffs, the 1985 CBA has been violated, and UTU has failed to take proper action even after plaintiffs followed the proper grievance procedures. *Id.* at ¶¶ 6-9 and 17-18. Plaintiffs allege that UTU has declined, in writing, to take any action on their behalf several times. *Id.* Specifically, plaintiffs allege that on November 15, 2004, they appealed the prior decisions of UTU not to take action and that UTU still failed and refused to process any grievance. *Id.* Plaintiffs filed an amended complaint against defendants claiming (1) discrimination under the RLA, and (2) breach of duty of fair representation. See Filing No. 9. The court dismissed the discrimination claim against UTA, finding that the discrimination claim is the same as a breach of fair representation claim. Filing No. 25 at 7-8.

Prior to the CBA, hostler and helper positions were evidently filled by firemen in the engine service ranks. Plaintiffs contend the CBA phased out the firemen position. Plaintiffs argue that, in spite of this contractual language, the craft of firemen is alive and

3

well in North Platte and is the source for filling hostler positions. Defendants contend that is not accurate, as employees are not hired as firemen and have not been since 1985, nor does UTU place engineers on any rosters. According to plaintiffs, Article XIII eliminated firemen by attrition, unless needed to provide assistance for engineers and hostlers. However, according to UP and UTU, hostlers were not eliminated. Article XIII, Firemen, Section 1(10)(c) of the CBA, which is the operative document determining how hostler/hostler helper positions will be filled, states as follows:

> Employees in engine service who established seniority prior to November 1, 1985 will continue to fill hostler and hostler helper positions and vacancies thereon in accordance with agreements in effect as of that date. If such position cannot be filled by such employees, and it is not discontinued pursuant to Paragraph (b) above, qualified train service employees will be used. In that event, bulletined vacancies will be advertised to train service employees, and if no bids are received the junior qualified train service employee at the location will be assigned; temporary vacancies will be filled from the yard or combined road/yard extra board.

Filing No. 74, Ex. 1, at 26. Plaintiffs believe this section requires hostler work to be assigned to train service employees. Article XIII, Section, deals with firemen, and states:

> Article XIII – Firemen. The craft or class of firemen (helpers) shall be eliminated through attrition except to the extent necessary to provide the source of supply for engineers and for designated passenger firemen, hostler and hostler helper positions. Trainmen shall become the source of supply for these positions as hereinafter provided.

*Id.* at 22.

Plaintiffs ask the court to disregard this agreement to the extent it incorrectly interprets the CBA. With regard to seniority, the CBA states:

> 3) An employee who has established seniority as conductor (foreman), trainman (brakeman-yardman), hostler or hostler helper (but without seniority as a locomotive fireman) who is selected for engine service shall retain his seniority standing and all other rights in train and/or yard or hostling service. However, such employee shall be permitted to exercise such rights only in the event he or she is unable to hold any position or

4

assignment in engine service as engineer, fireman on a designated position in passenger service, hostler or hostler helper.

(Emphasis added) Filing No. 74, Ex. 1, at 29.

The Margason agreement states:

> (2) Employees selected for engine service under Section 3 - Retention of Seniority - and Section 4 - Promotion - will be used on permanent vacancies of engineer, firemen on a designated position in passenger service, hostler or hostler-helper. These employees will acquire seniority in engine service in accordance with applicable rules.

Filing No. 72, Ex. 4, at 1. The Margason agreement also states:

> After the selected employee successfully completes the Engine Service Training Program, the employee is to exercise engine service seniority in accordance with applicable rules.

*Id.* at 2. This agreement was signed by E. E. Margason, General Director-Labor Relations for UP and G. A. Eickmann, General Chairman for UTU and C.L. Barrett, General Chairman for UTU.

UTU provided an explanation of Article XIII in 1990. Eickmann stated:

> Under the provisions of paragraph (2) above [Margason Agreement] and Section 1(10)(c) of Article XIII, all permanent vacancies in hostling service will be filled by employees having seniority in engineer service. Therefore, [sic] all employees establishing a seniority date in engine service after November 1, 1985, would be required to exercise their engine service seniority to permanent vacancies as a hostler/hostler helper before they could return to train service.

Filing No. 68, Ex. 12 at 1.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322,

1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not

6

weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**DISCUSSION**

*a. Background*

In the rail industry, employment is usually drawn along craft lines: train service (brakeman to conductor) and engine service (fireman to engineer). With the elimination of the craft of fireman, it appears that the train service employees became the source for engineers. In general, UP hires employees into train service jobs, such as brakemen, watchman and conductors. Engineers are railroad employees who operate locomotives for the railroad. Jobs as train service "trainmen" pay more than the engine service "hostler" jobs. Engineer positions pay more than train service jobs. According to defendants, trainmen may agree to enter engine service when positions arise. These jobs include engineers and hostlers. Once train service employees enter the engine service positions, defendants argue they must fill any and all engine service openings, including lower paying hostler jobs, before they can return employees to train service positions. According to the defendants, plaintiffs were hired in approximately 1998 as train service employees and then voluntarily filled openings in the engine service division. Plaintiffs are unhappy with their positions as hostlers in the engine service area and apparently prefer train service positions.

According to plaintiffs, upon apparent advice of management, plaintiffs went through engineer training. The North Platte yard, thereafter, eliminated certain engineer positions due to technological advances. This caused plaintiffs to move lower on the engineer seniority roster, and caused them to fill hostler positions. Those with less seniority than plaintiffs on the engine list had to move out of their positions into train service positions.

In 2002, a group of plaintiffs sent a letter requesting that those in lower engineer seniority be assigned to hostling positions. G. C. Hazlett, General Chairman of the United Transportation Union, responded saying it was too late to change or appeal the CBA, but he would not be opposed to seeking a modification of the CBA. A group of employees in Council Bluffs and Denver apparently made the same request. A modification was drafted and voted on in early October 2003. The modification passed in Council Bluffs and Denver but failed in North Platte. On February 15, 2005, plaintiffs filed this lawsuit. Plaintiffs argue that UTU breached its duty of fair representation by conspiring and promoting employees with less seniority to higher classifications and for failing to progress the grievances filed by the plaintiffs. UTU argues that the plaintiffs worked under the Margason Agreement since their initial starts as hostlers nearly eight years ago. Many were promoted to engineers and then received bumps back to hostlers in 1999 and 2002. Thus, argues UTU, plaintiffs did not complain about these issues for at least four years. UTU contends that there was a six-year gap between 1998 and 2004 before the plaintiffs began their internal union procedure.

*b. Failure to exhaust grievance procedures* and *exhaustion of international union remedies*

There are apparently three avenues of union representation—local, regional and national—which include both internal and external venues. Defendant UTU argues that

plaintiffs failed to exhaust their administrative remedies prior to filing suit. First, UTU argues that plaintiffs were required to file their complaints with the National Railroad Adjustment Board (NRAB). 45 U.S.C. § 153 (j). The court agrees. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-653 (1965) (employees must utilize available grievance procedures prior to lawsuit). UP argues that plaintiffs are attempting to bypass adjudication of the NRAB by suing UTU and UP in federal court instead. The NRAB permits employees to file a grievance with or without the assistance of the union. The court agrees that the NRAB has exclusive jurisdiction over these minor claims.[4] *Raus v. Brotherhood Ry. Carmen*, 663 F.2d 791, 794 (8th Cir. 1981). The primary exception to this claim is where the filing of a grievance would prove futile. *Raus*, 663 F.3d at 798. A dispute arose as far back as 1987 over the hostler change. On January 23, 1990, General Chairman G.A. Eickmann addressed this issue and upheld the practice. Defendants argue that neither the1990 letter nor the 1987 Margason Agreement was ever appealed, and UP claims that any claim against it must be pursued before the NRAB. The court agrees and finds plaintiffs did not exhaust their claims with the NRAB prior to filing in federal court. The court further concludes that plaintiffs did not make a showing that such a filing would have been futile.

---

[4]The court finds this a minor claim, as it involves UP's allegation that it has a contractual right to support its actions. *See Consolidated Rail Corp. v. RLE*, 491, U.S. 299, 307 (1989) ("Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major."); ("minor dispute in railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board"). *Id.* at 303. The burden of establishing a minor grievance is slight. *Schlitz v. Burlington Northern R.R.*, 115 F.3d1407 (8th Cir. 1997). Here, the parties disagree on interpretation of part of the contract. *UTU v. Kansas City Southern*, 172 F.3d 582, 585 (8th Cir. 1999) (where parties had competing interpretations of agreement, court finds it is minor dispute). Minor disputes must be resolved by arbitration before the NRAB. 45 U.S.C. § 153; *Brotherhood of Maintenance Workers v. Burlington Northern Santa Fe Railroad*, 270 F.3d 637, 639 (8th Cir. 2001). The court finds this is a conflict between the parties as to the interpretation of the CBA and the Margason Agreement. As such, it is a minor dispute and not subject to court intervention.

Second, UTU also argues that plaintiffs failed to exhaust their internal union remedies. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). The UTU Constitution provides for review when a member is unhappy with a decision such as this one. Plaintiffs did not appeal Eickmann's 1990 interpretation of the July 22, 2003, letter. Filing No. 68, Ex. O. Plaintiffs did not use any of their contractual grievance procedures. The first formal grievance occurred in 2004. For the reasons set forth herein, the court likewise finds plaintiffs could have filed an internal claim with the Union and chose not to do so.

Plaintiffs additionally argue that UT mishandled their grievances. Plaintiffs state that they made numerous requests that a grievance be processed, but such requests were refused. Filing No. 82, Exs. 3 and 5; Filing No. 83, Exs. 2 and 3. Thus, any other exhaustion, argues plaintiffs, would be futile. UTU argues that plaintiffs claim that UTU mishandled their grievances is without merit. UTU bases this argument on its belief that the plaintiffs never filed any grievance with UTU. At one point both General Chairmen Eickmann and Hazlett interpreted the agreements in this case. As stated herein, plaintiffs did not timely appeal these interpretations. Plaintiffs argue that they delegated their right to file appeals and grievances to Attorney Corey L. Stull. On August 31, 2004, Stull sent a letter to the local union evidently appealing the UTU's interpretation of the CBA. Said letter was forwarded by UTU to the International President, Paul C. Thompson. Thompson responded that an attorney cannot file an appeal and in any event the appeal was time-barred. Filing No. 73, Ex. 5. Plaintiffs contend they followed the appropriate grievance procedures with the UTU by filing grievances at the local level and up to the international president. It appears this process began with a formal grievance letter on August 31, 2004, but not prior to that date. Filing No. 73, Ex. 2. It further appears that letters went back and

10

forth through December 6, 2004. Filing No. 73. The court finds the UTU did not mishandle the plaintiffs' grievances. As stated herein, these grievances were not timely, since no formal grievances were filed prior to late 2004. Accordingly, the court finds this claim to be without merit.

### c. Statute of Limitations

Defendants first argue that plaintiffs' claims are barred by the statute of limitations. Plaintiffs contend that they first presented a written grievance on August 31, 2004. Filing No. 82, Ex. 3. Three additional requests were made thereafter, and the Union turned them down. The case was filed within three months after the last refusal. The court agrees with the defendants. The plaintiffs who worked under the CBA and Margason Agreements waited seven years to file suit. From the time of their entry into the engine service positions, they have been bumped from engineers to lower positions, such as hostlers. During those years they made no attempt to challenge either the CBA or the Marguson Agreement. The statute of limitations for a duty of fair representation is six months. *DelCostello v. Teamsters*, 462 U.S. 151, 171 (1983); *Gustafson v. Cornelius*, 724 F.2d 75, 79 (8th Cir. 1983). The statute begins to run when the agreement is signed. *Zapp v. UTU*, 879 F.2d 1439, 1441 (7th Cir. 1989) (six months after signing collective bargaining agreement unless discovery exception applies). A claim against a union for breach of duty of fair representation occurs when the claimant knew or reasonably should have known the breach occurred. *Skyberg v. United Food & Commercial Workers Int'l Union,* 5 F.3d 297, 301 (8th Cir. 1993) (when plaintiff first knew he could maintain a cause of action); *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2nd Cir. 1984); *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188 (3d Cir. 1984).

The agreements in question in this lawsuit were signed in 1985 and 1987. The employer, union and employees operated under this CBA for twenty years. Plaintiffs worked for several years for UP prior to complaining about the agreement. Plaintiffs voluntarily left the train service to become engineers. Therefore, the court finds plaintiffs waited much too long to file their grievances.

### d. *Merits*

Even if the court somehow construed the claims by the plaintiffs to be timely filed, and even if the court concluded the plaintiffs met the grievance filing requirements, plaintiffs have not set forth sufficient evidence to show that UTU breached its duty of fair representation. Plaintiffs move for partial summary judgment against UTU, alleging UTU has breached its duty of fair representation and misconstrued the CBA. Plaintiffs assert that the CBA gives them certain seniority rights, but the Union has failed to properly represent their interests. Plaintiffs contend that they lost their respective engineer jobs, and then sought to exercise their seniority to bid on trainmen or servicemen positions. Plaintiffs argue that UP and UTU would not permit them to bid for these higher paying jobs, but instead, they were forced to take the lower paying hostler positions. As a result, those employees who were less senior received the trainmen and switchmen positions, and the plaintiffs received lower paying hostler positions. Plaintiffs believe that the CBA requires UP and UTU to terminate the craft of fireman through attrition and to fill the hostlers' jobs through the ranks of the trainmen. Plaintiffs argue that they have the right to be trainmen before those who are junior to them in seniority.

Plaintiffs argue that the UTU breached its duty of fair representation and acted in concert with UP to violate the seniority rights of the plaintiffs. The duty of fair representation

is a judicially created remedy that monitors the relationship between a union and its members, and serves to protect members from any type of discriminatory practices by the union. *See Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 202-03 (1944); *N.L.R.B. v. Local No. 106 Glass Bottle Blowers Ass'n,* 520 F.2d 693, 697 (6th Cir.1975) ); *Thompson v. Brotherhood of Sleeping Car Porters,* 316 F.2d 191, 200 (4th Cir. 1963). In fact, in *Air Line Pilots Association International v. O'Neill,* 499 U.S. 65(1991), the United States Supreme Court has indicated that the duty of fair representation applies to all union activity, including contract negotiation. See *Air Line Pilots Association International v. O'Neill,* 499 U.S. 65, 67 (1991) (*citing Vaca v. Sipes,* 386 U.S. 171 (1967)).

UTU argues that plaintiffs' claims fail on the merits. To violate its duty of fair representation, a union must act in an "arbitrary, discriminatory" manner "or in bad faith." *O'Neill*, 499 U.S. at 67. The essence of plaintiffs' complaint is that UTU failed to interpret the 1985 agreement so as to supersede the Margason Agreement. Plaintiffs believe the firemen positions were eliminated. UTU disagrees. The court agrees with the defendants and finds that plaintiffs have failed to submit any evidence of bad faith or invidious discrimination or discriminatory motive. In fact, G. C. Hazlett actually drafted the language requested by the plaintiffs and asked the three locations, North Platte, Denver, and Council Bluffs, to vote on the change. However, the rank and file in North Platte voted it down by a five-to-one margin. In addition, plaintiffs waited another one and one-half years to file their lawsuit after the vote occurred. The court finds plaintiffs have failed to submit evidence that UTU breached its duty of fair representation in this case.

THEREFORE, IT IS ORDERED that:

1. Plaintiffs' motions for summary judgment, Filing Nos. 64 and 76, are denied;

2.   Defendants' motions for summary judgment, Filing Nos. 58, 60, and 62, are granted;

3.   Plaintiffs' motions to dismiss, Filing Nos. 101 and 102, are granted; and

4.   This case is dismissed.   A separate judgment shall be entered in conjunction with this Memorandum and Order.

DATED this 10th day of May, 2007.

                                 BY THE COURT:


                                 s/ Joseph F. Bataillon
                                 Chief United States District Judge